BRADLEY (STEAM–PACKET CO. v.). See Case No. 13,333.

## Case No. 1,788.
### BRADLEY v. TOCHMAN.
[1 Hayw. & H. 263.] [1]

Circuit Court, District of Columbia. May 17, 1847.

#### ATTORNEY AND CLIENT—DISBARMENT.

1. The profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him.

2. The discretion to remove or suspend an attorney or counselor ought to be exercised with great moderation and judgment, and the power to remove or suspend is one which ought to be exercised with great caution, and upon good and sufficient grounds.

The complainant submitted the following points:

In Burr's Case, pages 14 and 15 [Ex parte Burr, Case No. 2,186]: "The court has power to punish for any ill-practice attended with fraud and corruption, and committed against the obvious rules of justice and common honesty. * * * Is not the respectability of the court in some measure connected with that of the bar? A regard to the purity of the administration of justice demands that the bar should be pure and honest, and if possible highly honorable. The members of the bar in this country act in the double capacity of attorneys and counselors. As counselors the court reposes in them great confidence. It cannot doubt their honor and integrity, and it is the duty of the court to see that they conduct themselves in such a manner as to deserve their confidence." The Case of Brounsall, Cowp. 829, decides the principle that the court will strike from the rolls an attorney who, by his conduct, although not official, has shown himself not to be a fit person to be an attorney. The same doctrine prevails in Virginia. In Leigh's Case, 1 Munf. 481, Judge Rown says: "None are permitted to act as such (attorneys) but those who are allowed by the judge and certified by the court of the county of their residence to be persons of honesty, probity and good demeanor." In the Case of James A. Porter (U. S. v. Porter [Case No. 16,072]), of this court, the court

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

says: "It is the duty of the court to see that the members of the bar maintain the purity of character of that profession, which Lord Mansfield has justly said should be free from all suspicion. It is bound to discountenance and to punish every direct attempt by any of its officers to obstruct the due administration of justice, and there are standing at this bar gentlemen of high and honorable character for legal science, and for moral and professional integrity, to whom we should do injustice if we compelled them to associate with men of an opposite character."

OPINION OF THE COURT. On the 24th March, 1847, Mr. Joseph H. Bradley an attorney and counselor of this court, filed a paper purporting to be a complaint against Gaspard Tochman, also an attorney and counselor of the court, the substance of which complaint, as I understand it, is: That Mr. Tochman, after having agreed to unite with Messrs. Bradley and Fendall in the prosecution of the claims of the heirs of General Kosciusko, and to share equally the compensation which they might receive therefor, and having been informed of and acquiescing in an arrangement to procure, with the aid of Mr. Bodisco, the Russian minister, a power of attorney to Mr. Fendall and such other person as he might associate with himself, except Mr. Tochman, whom Mr. Bodisco could not recognize on account of his political offences in Poland, endeavored to defeat that arrangement by letters written by him to Mr. Bodisco and to some of the heirs of General Kosciusko. In support of this charge Mr. Bradley produced a copy of Mr. Tochman's letter to Mr. Bodisco, of the 18th of January, 1847, and of Mr. Bradley's letter to Mr. Tochman, of the 9th of January, 1846, informing him of the proposed arrangement to obtain the power of attorney to Mr. Fendall.

Mr. Tochman, in his answer, avers and charges that he never did, as is alleged, agree to the suggestions contained in Mr. Bradley's letter of the 9th of January, 1846, and refers to sundry documents and papers filed with his answer.

The question whether he did agree to the suggestions contained in that letter is a question of fact which we do not deem necessary to be decided by the court in the present state of the case, because, if he did so agree and afterwards refused to be bound thereby, such refusal might not imply such misdemeanor and moral obliquity as would justify the court in expelling him from the bar; and if he did not so agree he has not been guilty of a violation of good faith in endeavoring to defeat that arrangement. The whole ground of our jurisdiction in such a case is the power and authority we have to expel an attorney or counselor of the court for misbehavior. If his offence be not such as would justify his final expulsion, or at

least a temporary suspension of his functions, and if the charge, as made, do not amount to such an offence, the court, as we think, ought not to go into an investigation of the matter, because it would lead to no practical result. It is true that the court may reprove and censure an attorney or counselor for conduct not amounting to such a misdemeanor as would justify his expulsion or suspension; but in cases of this inferior grade, we ought not, perhaps, to act in a summary way when the parties aggrieved can have adequate relief in the ordinary course of law. So far, then, as regards the charge of Mr. Tochman for violation of the arrangement made by Messrs. Fendall and Bradley with Mr. Bodisco, the court does not deem it necessary to pursue the investigation further, but will leave it to the parties themselves, the clients, to make their own arrangements, as to the powers they may think proper to give to their attorneys.

Another ground of complaint by Mr. Bradley in his statement is that the letter to Mr. Bodisco contains averments which he says "are in the main absolutely untrue, so far as his action is detailed." In that letter of the 18th of January, 1847, Mr. Tochman says: "Under my control then, and through my exertions only, the right of the heirs is already established to the whole fund, and had Messrs. Fendall and Smith done their duty, had they not permitted Mr. Bomford to collect the money of the estate and to speculate therewith, we could receive now the whole fund without any further litigation;" and in the same letter Mr. Tochman says: "It is to be expected, and cannot surprise neither your excellency nor the government of his majesty, that if the power of attorney, intended to supersede me, comes and be made use of, I shall defend my rights by all possible means. Let us then suppose that the present administration shall refuse to interfere on my behalf in this controversy, because the heirs of Kosciusko are the subjects of his majesty and within his exclusive power, my course would be to sue Messrs. Fendall and Bradley to set aside their power of attorney, as obtained by undue means and contrary to law." These extracts contain the strongest grounds of the complaint of Mr. Bradley against Mr. Tochman in this part of the case.

It will be perceived that he does not, in that letter, charge Messrs. Bradley and Fendall positively and directly with obtaining a power of attorney by undue means, but says "if the power of attorney comes and be made use of he shall defend his rights by all possible means; and that his course would be to sue Messrs. Fendall and Bradley to set aside their power of attorney as obtained by undue means and contrary to the law." It seems to us that this. at most, can only amount to a threat by Mr. Tochman, that if the power of attorney comes and be acted upon his course would be to use lawful means to set it aside on the ground that it was obtained by undue means. It is not a direct averment that undue means were or had been used, but that he should, on that ground, attempt to set it aside. He does not state what were the undue means by which the power of attorney, if made, would. be obtained, nor that those means would be fraudulent; but that if obtained, it would be obtained "contrary to law." Although Mr. Tochman did not, in his letter to Mr. Bodisco, state what the undue means were, yet we think it appears on the face of Mr. Bradley's complaint, and the documents which he had adduced in support of it, that Mr. Tochman considered the application of Messrs. Fendall and Bradley to Mr. Bodisco for his official aid in procuring a power of attorney to them, to the exclusion of Mr. Tochman, as undue means, to which he alluded in his letter to Mr. Bodisco. In its most inflamed sense it may amount to an accusation that they were uniting with the Russian government to oppress him by operating on the fears of his clients to exclude him from the conduct of their suit. We assume the charge to be gratuitous and groundless, as we have no doubt it is; still we must look at Mr. Tochman, as he represents himself to be, an exile from his native country for his political opinions, and make some allowance for the suspicions which would occupy his mind at the interference of Mr. Bodisco to exclude him from the case. He may have accused wrongfully, untruly, yet not wilfully.

In the case of Ex parte Burr, 9 Wheat. [22 U. S.] 529, the supreme court says: "The profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him." And again, the discretion, to remove or suspend "ought to be exercised with great moderation and judgment." And again, "the power is one which ought to be exercised with great caution."

The court feels it their duty to maintain the respectability of the bar among themselves, but it does not perceive in the conduct of Mr. Tochman such plain intentional misconduct as to call for the summary jurisdiction of this court in the present case.